

**CALLI LAW, LLC**
One Flagler Building, Suite 1100
14 Northeast 1st Avenue
Miami, Florida 33132
T. 786.504.0911
F. 786.504.0912
www.calli-law.com

May 4, 2022

**FILED VIA EMAIL**

The Honorable Sarah Netburn
United States Magistrate Judge
Southern District of New York
40 Foley Square
New York, NY 10007

Re:     *In Re Non-Disclosure Orders to Electronic Communication Service Providers and Remote Computing Service Providers in Criminal Investigation Assigned USAO No. 2020R01153*, Case No. 22 MAG 2364 (SN).[1]

Dear Magistrate Judge Netburn:

On behalf of non-profit news media organization Project Veritas and its founding journalist and President James O'Keefe, we move to clarify the Court's March 10, 2022, Order lifting the 18 U.S.C. § 2705(b) gag orders in the above-referenced matters.  Pursuant to a series of subpoenas, 18 U.S.C. § 2703(d) orders, and warrants, prosecutors engaged in a campaign to compel Project Veritas's providers to secretly produce voluminous records. These included attorney-client privileged communications, First Amendment privileged material, and reporter's privileged material.

This case involves unprecedented government invasions into the newsgathering work of Project Veritas, which lawfully received an abandoned diary and other personal effects previously belonging to an adult child of then-presidential candidate Joe Biden. Project Veritas investigated a newsworthy story, and ultimately chose not to publish it.  Just like the recent news that reporter Josh Gerstein and Politico lawfully received a United States Supreme Court draft opinion overturning *Roe v. Wade*, James O'Keefe and Project Veritas lawfully received Ashley Biden's diary. There is no distinction between the two journalists' conduct, except that Mr. O'Keefe decided not to publish the Ashley Biden news story.

---

[1] Related cases: *In re Search Warrants dated November 3 and 5, 2021*, Case No. 21 Misc. 00813, 21 Misc. 819, and 21 Misc. 825, and numerous case numbers related to demands with the assigned USAO No. 2020R01153, we are currently aware of: 20 MAG 12611, 20 MAG 12613, 20 MAG 12614, 20 MAG 12623, 20 MAG 13189, 21 MAG 548, 21 MAG 763, 21 MAG 992, 21 MAG 1867, 21 MAG 2537, 21 MAG 2711, 21 MAG 2873, and 21 MAG 3384.

The government's First Amendment-infringing seizures are currently being litigated before District Judge Analisa Torres. *See In re Search Warrants dated November 3 and 5, 2021*, Case No. 21 Misc. 00813, 21 Misc. 819, and 21 Misc. 825. Unfortunately, the aggrieved journalists are stymied in bringing all relevant facts about the government's invasions to the District Court's attention. That is because even after Your Honor's March 10, 2022 Order, some providers believe they are prohibited from providing Project Veritas and its journalists with full information regarding what the government compelled, and what the provider produced. This is the result of the prosecutors crafting a deceptive proposed order (captioned as "modifying" the gag orders instead of lifting them, which the Order in fact does). Project Veritas and James O'Keefe request entry of the proposed order attached as **Exhibit A**, to make it clear Project Veritas's providers that they can communicate freely with Project Veritas and the aggrieved journalists.

### The Government's Investigation into Joe Biden's 40-Year Old Daughter's Abandoned Diary and Its Pursuit of a Non-Crime

We have addressed the factual background in other filings and adopt that discussion by reference. *See* 3/30/22 Petition for Return of Property Pursuant to Rule 41(g), *In re Search Warrant dated November 5*, Case No. 21 MISC. 813 (Docket No. 48) at 3-7. In summary, Project Veritas "is a national media organization dedicated to 'undercover investigative journalism.'" *Project Veritas Action Fund v. Rollins*, 982 F.3d 813, 817 (1st Cir. 2020). In early September 2020, Project Veritas received a news tip, on an established tip line, explaining that sources had found a diary written by Ashley Biden, the forty-year-old daughter of then-presidential candidate Joe Biden. One of the sources had moved into a house where Ashley Biden had previously stayed temporarily. Ms. Biden had left the diary and other items behind when she vacated the house, abandoning them. As described by the sources, the contents of the abandoned diary were newsworthy. They were right: the diary's allegations about Joe Biden's conduct towards his daughter when she was a child are serious.

By the time the sources contacted Project Veritas, the abandoned diary and other belongings were in their possession. Project Veritas lawfully received these materials from the sources. Project Veritas researched and investigated the potential news story about the diary and attempted to authenticate the abandoned diary and its contents. Ultimately, Project Veritas chose not to publish its reporting and in early November 2020, arranged for the delivery of the diary and other abandoned items to local law enforcement in Florida.

Even under the most aggressive view of the facts by the government, there is no potential crime to investigate, only First Amendment-protected newsgathering. *Bartnicki v. Vopper*, 532 U.S. 514 (2001) held that journalists may lawfully receive material from sources *even if* that material is illegally obtained by sources themselves. Its progeny, including here in the Southern District of New York, have been even more protective of this First Amendment right. *See Democratic National Cmte. v. Russian Federation*, 392 F.Supp.3d 410, 434-36 (S.D.N.Y. 2021) (in Wikileaks controversy, holding that per *Bartnicki* no liability could attach even where there was active solicitation and encouraged delivery of stolen materials); *Allen v. Beirich*, 2021 WL 2911736 at *4-5 (4th Cir. July 12, 2021) (Southern Poverty Law Center purchased material stolen from a white supremacist organization by its former accountant, but because SPLC interacted with the former accountant and paid for the material after it had already been stolen, no liability could

2

attach); *Jean v. Massachusetts State Police*, 492 F.3d 24, 31 (1st Cir. 2007) (Publishers may, without liability or punishment, even be in "active collaboration" or may aggressively "solicit[] stolen information" because those are "common journalistic practices.").

James O'Keefe, Project Veritas, and its journalists committed no crime and at all times conducted their news gathering in a lawful, ethical, and constitutionally protected manner. While the government continues to peddle the lie that the diary - or other abandoned belongings - were "stolen," it has produced no support for its false claim, and for good reason: the truth is, the diary and personal effects were not stolen. At the end of the day, the government's utilization of the "s" word is a red herring designed to take the Court's eye off the First Amendment-protected conduct of Project Veritas in investigating a newsworthy story about the Biden family and the fact that the government's attack on Project Veritas is unlawful. Because *even if* the sources had "stolen" the diary and personal effects, it does not matter. Project Veritas had no role or participation in the acquisition of the diary or any personal effects and indeed, the sources already had access and possession to all of it before Project Veritas was ever contacted. This is a non-crime, but a government desecration of the First Amendment.

## The Government's Secret Demands that Providers Produce Project Veritas's Data

On October 29, 2020, Ashley Biden's lead lawyer Roberta Kaplan informed Project Veritas's Chief Legal Officer Jered Ede that she would refer the matter to the United States Attorney's Office for the Southern District of New York ("USAO"). It is unfortunately not surprising that Ashley Biden's lawyers were able to obtain a prompt audience with, and hasty and extreme action from, the USAO. On November 22, 2020, the USAO issued its first secret subpoena. The 17 days clearly provides insufficient time for the USAO to obtain the requisite permission from Main Justice to attack a journalist, *see* 28 C.F.R. § 50.10 and Justice Manual 9-13.400, particularly because on December 14, 2020, then-Attorney General Barr announced his resignation.

The government, we are confident, did not follow or play by the rules here. Aside from the self-evident political power wielded by the Biden family, Ashley Biden's lead lawyer Roberta Kaplan is connected to then-Acting United States Attorney Strauss through Ms. Strauss's former daughter-in-law and top Andrew Cuomo aide, Melissa DeRosa. Attorney Kaplan and Ms. Strauss's daughter-in-law DeRosa were both part of the unsuccessful effort to shield Governor Andrew Cuomo from consequences for his serial sexual harassment of women, including by discrediting his victims. *See Report of Investigation into Allegations of Sexual Harassment by Governor Andrew M. Cuomo* (Aug. 3, 2021) at 109 (Attorney Kaplan and DeRosa's work on a draft op-ed designed to discredit one of Cuomo's victims), and as to DeRosa's numerous other efforts to discredit sexual harassment victims, *passim*, *available at* https://ag.ny.gov/sites/default/files/2021.08.03_nyag_-_investigative_report.pdf. Attorney Kaplan also represented DeRosa in the New York Attorney General's investigation into Cuomo's serial harassment, which concluded that Cuomo "sexually harassed a number of current and former New York State employees" and that his Executive Chamber's culture was "filled with fear and intimidation" which helped "normalize[e] the Governor's frequent flirtations and gender-based comments" and "contributed to the conditions that allowed the sexual harassment to occur and persist." *Id.* at 109.

Having been convinced by Ashley Biden's lawyers to pursue a First Amendment-invasive investigation into the free press over the matter of Ms. Biden's diary, prosecutors began to secretly obtain journalists' emails and other records directly from Project Veritas's computer services providers, as well as information from journalists' personal accounts. The government has obtained information from providers including Microsoft, Apple, Google, and Uber. This information – including in many cases the contents of emails – relates to Project Veritas founder and President James O'Keefe, Project Veritas's Human Resources Manager, Project Veritas's security detail, and eight Project Veritas journalists. In addition to professional accounts, the government also obtained information from personal accounts belonging to at least two Project Veritas journalists. In some instances, the government seized emails dating back to January 1, 2020, *over eight months before the sources had even contacted Project Veritas*.

This chart summarizes what the aggrieved journalists currently know about the government's extensive invasions pursuant to gag orders:

| Date | Instrument Compelling Production | Provider | Project Veritas Personnel | Information Obtained | Length of Gag Order |
|------|----------------------------------|----------|---------------------------|----------------------|---------------------|
| 11/22/20 | Subpoena<br><br>20 MAG 12613 | Google | Project Veritas Investigate Journalist (Personal Email Account) | Subscriber Information, etc. | Initially one year<br><br>Mag. Gabriel Gorenstein |
| 11/22/20 | Subpoena<br><br>20 MAG 12614<br><br>Mag. Gabriel Gorenstein | Microsoft | Project Veritas Human Resources Manager | Subscriber Information, etc. | Initially one year, later (11/19/21) extended 180 days<br><br>Mag. Ona T. Wang |
| 11/24/20 | "Subpoena"<br><br>20 MAG 12611 | Apple | Project Veritas Human Resources Manager<br><br>(Possibly personal account, but unclear at this time) | Unknown | Unknown length |
| 11/24/20 | 18 U.S.C. § 2703(d)<br><br>20 MAG 12623<br><br>Mag. Gabriel Gorenstein | Google | Project Veritas Investigative Journalist (Personal email account) | Email headers and timestamps | Initially one year |
| 11/24/20 | 18 U.S.C. § 2703(d)<br><br>20 MAG 12623<br><br>Mag. Gabriel Gorenstein | Microsoft | Project Veritas Human Resources Manager | Email headers and timestamps | Initially one year, later (11/29/21) extended one year<br><br>Mag. Debra Freeman |
| 12/11/20 | 18 U.S.C. § 2703(d)<br><br>20 MAG 13189 | Google | Project Veritas Investigative Journalist (Personal email account) | Email headers and timestamps | Initially one year |

| Date | Instrument Compelling Production | Provider | Project Veritas Personnel | Information Obtained | Length of Gag Order |
|---|---|---|---|---|---|
| | Mag. Sarah Netburn | | | | |
| 1/14/21 | Warrant<br><br>21 MAG 548<br><br>Mag. Ona T. Wang | Google | Project Veritas Investigative Journalist (Personal email account) | All emails, Address Book, Subscriber Information | Initially one year |
| 1/14/21 | Warrant<br><br>21 MAG 548<br><br>Mag. Ona T. Wang | Microsoft | Two Project Veritas Investigative Journalists, Project Veritas Human Resources Manager | All emails, Address Book, Subscriber Information | Initially one year, later (1/11/22) extended one year<br><br>Mag. Barbara Moses |
| 1/21/21 | "Subpoena/Summons"<br><br>21 MAG 763 | Apple | Project Veritas Investigative Journalist | Unknown | Unknown |
| 1/21/21 | "Subpoena/Summons"<br><br>21 MAG 763 | Apple | Project Veritas Investigative Journalist (Personal Account) | Unknown | Unknown |
| 1/26/21 | Warrant<br><br>21 MAG 992<br><br>Mag Debra Freeman | Microsoft | Project Veritas Journalist | All emails, Address Book, Subscriber Information | Initially one year, later (1/13/22) extended one year<br><br>Mag. Debra Freeman |
| 2/16/21 | Subpoena<br><br>21 MAG 1867 | Google | Project Veritas's Security Detail | Subscriber Information, etc. | Initially one year<br><br>Mag. Katherine H. Parker |
| 2/18/21 | "Subpoena" | Uber | Project Veritas Journalist (Personal Uber account) | Unknown | Unknown length |
| 3/5/21 | Warrant<br><br>21 MAG 2537<br><br>Magistrate Signature Unclear | Microsoft | Three Project Veritas Journalists | All emails, Address Book, Subscriber Information | One year |
| 3/9/21 | 18 U.S.C. § 2703(d)<br><br>21 MAG 2711<br><br>Mag. Barbara Moses | Microsoft | Project Veritas Journalist | Email headers and timestamps | One year |
| 3/15/21 | Warrant<br><br>21 MAG 2873 | Apple | Project Veritas Journalist (Personal email account) | Unknown | Unknown length |
| Date not known, but Uber produced records | Unknown | Uber | Project Veritas | Unknown | Unknown length |

| Date | Instrument Compelling Production | Provider | Project Veritas Personnel | Information Obtained | Length of Gag Order |
|------|----------------------------------|----------|---------------------------|---------------------|---------------------|
| on 3/22/21 | | | | | |
| Date not known, but Uber produced records on 3/22/21 | Unknown | Uber | Project Veritas Journalist (Possibly personal Uber account, but unknown) | Unknown | Unknown length |
| 4/9/21 | Warrant  21 MAG 3384  Mag. Stewart D. Aaron | Microsoft | James O'Keefe | All emails, Address Book, Subscriber Information | One year |

## Although the Court Has Lifted the Gag Order, Providers Erroneously Believe They Cannot Communicate Freely with Project Veritas

The government's investigation into the abandoned diary has been public since November 4, 2021. That is when the government conducted pre-dawn raids to execute search warrants at the homes of two former Project Veritas journalists to seize their electronic devices. Two days later, the government conducted a third pre-dawn raid at a journalist's home, this time James O'Keefe's. The aggrieved journalists moved for the appointment of a special master to review the seized devices. The government unsuccessfully opposed the motion. To protect "First Amendment concerns, journalistic privileges, and attorney-client privileges" and establish a process that would "not only be fair but appear to be fair," United States District Judge Analisa Torres granted the motion, appointing retired United States District Court Judge Barbara S. Jones to review the devices and make privilege determinations. Dec. 8, 2021 Order, *In re Search Warrant dated November 5*, (Docket No. 48) at 3-5.

At no point in the special master litigation did the government reveal that it already had the means to circumvent the special master procedures via the voluminous materials secretly obtained from the aggrieved journalists' providers. Worse, the government moved to extend its 18 U.S.C. § 2705(b) gag orders even after its investigation was public, and after the Special Master's appointment.

The government's invasions only came to light because when it sought to extend one of its Microsoft gag orders, someone on Microsoft's legal staff had seen reporting about the government's abandoned diary investigation and knew that the matter was already public. This caused Microsoft to push back against the government's false claims of necessity for extending the gag order. Still the government did not relent. To its credit, Microsoft refused to be intimidated by the government and ultimately retained outside counsel. Only when Microsoft's lawyers provided prosecutors with a draft brief addressing the unconstitutionality of extending the gag order (such orders are prior restraints and content-based speech restrictions, thereby triggering strict scrutiny review which the government could not possibly satisfy with its investigation public) did the government back down from its unconstitutional request.

Having been backed down by Microsoft's lawyers, the government submitted a proposed order which Your Honor signed, lifting the gag orders. Once Microsoft received a copy of the Order, it informed Project Veritas of what had occurred. Over the next several weeks, other providers sent barebones disclosures to Project Veritas or its journalists of similar invasions by the government. Only Microsoft, however, recognizes the fact that it can freely communicate with Project Veritas about these matters.

The problem is that these prosecutors were manipulative in constructing the proposed order's phrasing, adopting an approach that would remove the gag order (thereby giving the veneer that the government was acting properly) but using language that might mislead at least some providers to believe they could only provide Project Veritas with limited information. The prosecutors asked for an order permitting providers "to disclose the existence of the NDOs and the legal process that was attached thereto to any other person, to the extent the period of non-disclosure under the NDOs has not already lapsed." **Exhibit B**, Government 3/9/22 Letter and Signed Order. The proposed order however, was misleadingly captioned "Order Modifying Non-Disclosure Orders Issued Pursuant to 18 U.S.C. § 2705(b)." *Id.*, attachment. The signed Order reflects this language. *Id.*

In numerous instances, the prosecutors have succeeded in confusing or misleading providers. Uber states it "cannot provide . . . additional information with this matter," other than the relevant dates when the demand was made, when the gag order was vacated, and the relevant FBI and USAO personnel who made the request. **Composite Exhibit C**, Provider Communications. When asked directly for copies of what it produced to law enforcement Google articulated the erroneous belief that it "is not able to provide any produced documents sent to law enforcement." *Id.* Google added the absurd comment, "Please request those materials from the law enforcement agency directly." *Id.* Apple has likewise stonewalled: "If you have questions about the legal request or the information requested, please contact the [Federal Bureau of Investigation]." *Id.*

Providers' misapprehensions about what they can communicate to the aggrieved journalists stymies the ability of Project Veritas and its journalists to protect their privileges and First Amendment rights. And while Project Veritas and the aggrieved journalists have moved for the return of all of their seized property pursuant to Rule 41(g) of the Federal Rules of Procedure, s*ee In re Search Warrant dated November 5, 2021* (Docket No. 70), they have done so without knowing the full extent of the government's invasions.

The undersigned have conferred with the prosecutors regarding the relief requested but have not come to an agreement.

<u>**Conclusion**</u>

The aggrieved journalists' abilities to assert their constitutional rights are hindered if they cannot bring all relevant facts regarding the scope of the government's invasion to the district court's attention. Accordingly, we request that the Court enter an Order in the form proposed as **Exhibit A**, making it explicit that:

(1)  the gag orders are lifted and vacated in their entirety,

(2)  the providers may give copies of what they produced to the government to Project Veritas, the aggrieved journalists, and their lawyers, and

(3) the providers may communicate freely about this matter with Project Veritas, the aggrieved journalists, and their lawyers.


Respectfully submitted,

CALLI LAW, LLC

/s/

By:  _____
     Paul A. Calli
     Charles P. Short
14 NE 1st Avenue
Suite 1100
Miami, FL 33132
T. 786-504-0911
F. 786-504-0912
pcalli@calli-law.com
cshort@calli-law.com

*Admitted Pro Hac Vice in Related Matter*

Harlan Protass
PROTASS LAW PLLC
260 Madison Avenue
22nd Floor
New York, NY 10016
T. 212-455-0335
F. 646-607-0760
hprotass@protasslaw.com

*Counsel for James O'Keefe,*
*Project Veritas and Project*
*Veritas Action Fund*

Benjamin Bar
BARR & KLEIN PLLC
444 N. Michigan Avenue
Suite 1200
Chicago, IL 60611
T. 202-595-4671

Stephen R. Klein
BARR & KLEIN PLLC
1629 K Street, NW
Suite 300
Washington, DC 20006
T. 202-804-6676

ben@barrklein.com                    steve@barrklein.com

*Admitted Pro Hac Vice in Related Matter*    *Admitted Pro Hac Vice in Related Matter*


cc:      All Counsel of Record (via Email)

# EXHIBIT A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In Re Non-Disclosure Orders to Electronic Communication Service Providers and Remote Computing Service Providers in Criminal Investigation Assigned USAO No. 2020R01153 | **22 Mag. 2364**<br>**Order Vacating Non-Disclosure**<br>**Orders Issued Pursuant to**<br>**18 U.S.C. § 2705(b)** |

       Upon the application of Project Veritas and James O'Keefe, it is hereby ORDERED:

       1.      The Court clarifies that the non-disclosure orders issued pursuant to 18 U.S.C. § 2705(b) in all matters with the investigation assigned USAO NO. 2020R01153 were vacated as of March 10, 2022.

       2.      The electronic communications services and/or remote computing services to whom non-disclosure orders bearing U.S. Attorney's Office ("USAO") number 2020R01153 (the "NDOs") were issued pursuant to 18 U.S.C. § 2705(b) in connection with the above referenced investigation may freely communicate with the account holders, including Project Veritas, James O'Keefe, and the affected journalists, or their counsel.

       3.      For the avoidance of doubt, the Court makes it explicit that providers may provide to the account holders or their lawyers any materials or information provided by the provider to the government, or by the government to the provider.

Dated: New York, New York
      May _____, 2022

                                         _____
                                         HONORABLE SARAH NETBURN
                                         UNITED STATES MAGISTRATE JUDGE

# EXHIBIT B

 **U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

March 9, 2022

**BY EMAIL**

The Honorable Sarah Netburn
United States Magistrate Judge
Southern District of New York
40 Foley Square
New York, New York 10007

> Re:   *In Re Non-Disclosure Orders to Electronic Communication Service Providers and Remote Computing Service Providers in Criminal Investigation Assigned USAO No. 2020R01153*

Dear Judge Netburn:

The Government respectfully requests that the Court enter the attached proposed order permitting electronic communications service and/or remote computing service providers to whom non-disclosure orders (the "NDOs") bearing U.S. Attorney's Office ("USAO") number 2020R01153 (the "NDOs") were issued pursuant to 18 U.S.C. § 2705(b) in connection with the above-referenced investigation to disclose the existence of the NDOs and the legal process that was attached thereto to any other person, to the extent the period of non-disclosure under the NDOs has not already lapsed.

Respectfully submitted,

DAMIAN WILLIAMS
United States Attorney

By:  /s/
     Jacqueline Kelly
     Mitzi Steiner
     Robert B. Sobelman
     Assistant United States Attorneys
     (212) 637-2456/2284/2616

Attachment

# EXHIBIT C

Dear Account Holder,

Occasionally, we receive requests from law enforcement to provide them with information about Uber customers, drivers, or other users of the Uber app. We are required by law to provide them with this information. We are reaching out to let you know that we received a legal process seeking information related to your account. The legal process was accompanied by a court order prohibiting us from notifying you of law enforcement's request. That order has now expired. We are reaching out to let you know that we have gathered any responsive information and provided it to law enforcement on 03/22/2021

Please note that we are not permitted to provide you with any information about this matter, nor are we able to provide legal advice. We are simply complying with our policy of providing notice to our users of law enforcement requests for their information.

Thank you,
Law Enforcement Response Team

Dear Account Holder,

Through your correspondence, we understand that you have questions regarding the legal process served upon Uber related to your account. As we stated in our original notice to you on March 15, 2022, we receive legal process requests from law enforcement to provide them with information about Uber customers, drivers, or other users of the Uber app. We are required by law to provide data responsive to the legal process submitted.

The subpoena that we received seeking information about your account was originally accompanied by a court order prohibiting us from notifying you of law enforcement's data request. We were notified on March 15, 2022 that the court order prohibiting notification has been vacated and we thereafter notified you about the government data request related to your account on March 15, 2022.

Pursuant to your questions, and in an effort to provide additional information, we wanted to share that the subpoena seeking information about your account was received on February 18, 2021. It was issued by Assistant United States Attorney Robert B. Sobelman, U.S. Department of Justice - Southern District of New York, (212) 637-2200, and served upon Uber by Special Agent Michael Pereless, Federal Bureau of Investigation, (212) 384-1000. Responsive information was provided to law enforcement on March 22, 2021.

Please note that we cannot provide you with any additional information about this matter, nor are we able to provide legal advice. Please contact Assistant United States Attorney Robert B. Sobelman or Special Agent Michael Pereless should you have further questions related to the subpoena issued.

Thank you,
Public Safety Response Team

Hello,

We have received your reply to our notification email. In our email on March 28, 2022, we provided you with the legal process sent to Google by law enforcement. We are reattaching those documents to this correspondence. Google is not able to provide any produced documents sent to law enforcement.  Please request those from the law enforcement agency directly.

Please reply to this email or contact usernotice@google.com and reference the case identification number located in the subject line in any further communications regarding this matter.

Regards,

Google LLC

Customer Notice <noreply@apple.com>
Tue 3/29/2022 11:21 AM
To: ▮▮▮▮▮▮ 

NOTE: THIS NOTICE IS BEING SENT FROM A NO-REPLY EMAIL ACCOUNT—ANY RESPONSE TO THIS EMAIL WILL NOT RECEIVE A RESPONSE

Dear Account Holder/Customer:

On 2020-11-24, Apple Inc. ("Apple") received a legal request from Federal Bureau of Investigation, requesting information regarding your Apple account. This legal request on allowed delayed notice to the affected customer.

The contact information in relation to the request:

Requesting Agency:  Federal Bureau of Investigation.
Requesting Agency Location:  New York, New York
Legal Request Type:  Subpoena / Summons
Requesting Agency Case Number:  20 MAG 12611 / 2020R01153

Pursuant to the applicable Terms of Service and Apple's Privacy Policy, http://www.apple.com/legal/privacy/en-ww/

### Legal - Apple Privacy Policy - Apple Legal

At Apple, we respect your ability to know, access, correct, transfer, restrict the processing of, and delete your personal data. We have provided these rights to our global customer base and if you choose to exercise these privacy rights, you have the right not to be treated in a discriminatory way nor to receive a lesser degree of service from Apple.

www.apple.com

, and as required by U.S. law, Apple produced the requested data in a timely manner as required by the legal request.  If you have questions about the legal request or the information requested, please contact the requesting agency.